UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| THOMAS JACKSON, EMMA JACKSON, TJ AUTO BODY SERVICES, INC. dba "TJ ENTERPRISES", <br><br>         Plaintiff, <br><br>     v. <br><br> FARMERS INSURANCE EXCHANGE, TRUCK INSURANCE EXCHANGE, BRUCE H. BAILEY, JAMES GILLIS, STEVEN EASON, and DOES 1-40, <br><br>         Defendants. | Case No.: 2:12-CV-01020 WBS GGH <br><br><br><br><br> MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

        Plaintiffs Thomas Jackson, Edna Jackson, and TJ Auto Body Services, Inc., dba TJ Enterprises, brought suit against defendants Farmers Insurance Exchange ("Farmers"), Truck Insurance ("Truck"), Bruce H. Bailey, James Gillis, and Steven Eason for discrimination and contract causes of action arising from plaintiffs' Circle of Dependability ("COD") designation and Garage Keepers insurance policy.  Currently before the court is

1

defendants' motion to dismiss the First Amended Complaint ("FAC") in its entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.   Relevant Facts and Procedural History

Plaintiffs Thomas and Emma Jackson are a married African American couple. They have owned and operated TJ Enterprises, a automobile repair shop, for more than twenty years. (FAC (Docket No. 14) ¶ 3.) Since 1983, TJ Enterprises has been a COD repair facility with Farmers Insurance Exchange. (Id.) The benefits of being a COD repair facility include priority repair assignments from Farmers and prompt payments. (Id. ¶ 4.) Bruce Bailey, James Gillis, and Steven Eason are Caucasian Farmers employees associated with the COD program. In addition to the COD designation, plaintiffs had a Garage Keepers insurance policy, which, though marketed by Farmers, was purchased from and operated by Truck Insurance Exchange. (Id. ¶ 4a.)

In April 2011, plaintiffs performed a repair for a Farmers customer named "Aube." (Id. ¶ 10.) Farmers authorized, approved, and paid for the repair. (Id.) After the repair, Aube complained to plaintiffs about a dent in the hood and, later, about peeling paint. (Id.) The next time plaintiffs heard about the status of the vehicle, the vehicle was at American Body and Frame, another repair shop, and had been "taken apart." (Id.) Plaintiffs were told that the vehicle would be sold as salvaged. (Id. ¶ 11.) Plaintiffs claim that there was no independent inspection of the vehicle and that they were "denied the right of

2

inspection." (Id.)

Farmers employees Eason and Gills told plaintiffs that their claim for $9,675 would be covered by the Garage Keepers Policy issued by Truck, but Truck refused to cover the claim. (Id.) Farmers employees required plaintiffs to pay the $9,675 as a condition of staying in the COD program. (Id.)

The next event[1] that occurred between plaintiffs and Farmers involved a Toyota 4-Runner vehicle. (Id. ¶ 12.) Plaintiffs repaired the Toyota 4-Runner in 1991, painting over the hood and fenders. (Id.) They performed all work in a "well-executed manner." (Id.) Twenty years later, in 2011, the paint ostensibly began to come off of the hood but not the fenders, despite the fact that the fenders and hood were painted with the same paint. (Id.) Plaintiffs investigated and discovered that the customer parked under a tree. (Id.) Plaintiffs allege that sap caused the paint job to fail and that there was no defect in the workmanship, material, or repair. (Id.)

On January 26, 2012, Farmers employees notified many of the referring State Farm agents that plaintiffs "will be leaving" the COD program. (Id. ¶ 13.) The same email referred customers to a competitor. (Id.) On the same day, Farmers sent a letter to plaintiffs formally terminating plaintiffs from the COD program effective February 27, 2012. (Id.)

Plaintiffs allege that the two incidents involving repair work were "pretextual" reasons for terminating plaintiffs from the COD program. (Id. ¶ 10, 12.) Defendants knew at the

---

[1] Plaintiffs do not allege when the "next event" took place.

3

time that plaintiffs are African-American.  (Id. ¶¶ 13-14.)

Plaintiffs filed their Complaint on April 18, 2012, bringing seven causes of action against defendants based on discrimination, breach of contract, and misrepresentation in marketing under California state law.  (Compl. (Docket No. 1) ¶¶ 24-62.)  Defendants moved to dismiss all causes of action. (Defs.' First Mot. to Dismiss (Docket No. 10).)

Plaintiffs filed the FAC two months later, before the court ruled on the motion to dismiss, and defendants voluntarily withdrew their motion to dismiss the Complaint.  (Withdrawal of Mot. to Dismiss Compl. (Docket No. 18).)

The FAC alleges seven causes of action against defendants: (1) violation of U.S.C. § 1981; (2) breach of contractual duty (against all defendants); (3) breach of the implied obligation of good faith and fair dealing; (4) negligence; (5) breach of fiduciary duty; (6) breach of contract (against Farmers and Truck); and (7) violation of 42 U.S.C. § 1985(3).  (FAC ¶¶ 24-62.)  Defendants filed a motion to dismiss the FAC, (Defs.' Second Mot. to Dismiss (Docket No. 19)), which is currently before the court.

II.  Discussion

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a

4

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). In deciding whether a plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).

      A.   Section 1981

Section 1981 states, in relevant part, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). "'[M]ake and enforce contracts' includes the making, performance, modification, and termination of contracts . . . ." Id. § 1981(b).

"To state a claim under § 1981, a plaintiff must identify an impaired 'contractual relation,' by showing that intentional racial discrimination prevented the creation of a contractual relationship or impaired an existing contractual relationship." Boyd v. Feather River Cmty. College Dist., Civ. No. 11-0231 JAM EFB, 2011 WL 5024547, at *4 (E.D. Cal. Oct. 20, 2011). "[Section] 1981 can be violated only by intentional discrimination . . . ." Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982). "A plaintiff is not required to establish a prima facie case in the complaint." O'Donnell v. U.S. Bancorp Equip. Fin., Inc., Civ. No. 10-0941 TEH, 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010); see also

Sheppard v. David Evans & Assoc., — F.3d —, 2012 WL 3983909, at *3 n. 2 (9th Cir. 2012) (noting that, in the ADEA context, "[a] plaintiff is <u>not required</u> to plead a prima facie case of discrimination in order to survive a motion to dismiss") (emphasis in original)).

Plaintiffs allege that defendants were "acting in pursuant to official, *de facto* policies and in concert with one another when they injured and impair Plaintiff[,] . . . a business owned and operated solely by two African-American (black) individuals" and that "each defendant was acting with the shared objective to injure Plaintiff and others like them." (FAC ¶ 27.)

Plaintiffs do not allege that defendants intended to injure TJ Enterprises <u>because of</u> its owners' race, nor do they allege facts to show intentional discrimination, such as the fact that the COD designation was subsequently awarded to a Caucasian-owned garage or that other Caucasian holders of the Garage Keepers policy were treated differently. <u>See</u> <u>Schiff v. Barrett</u>, Civ. No. 10-1051 PJH, 2010 WL 2803037, at *4 (N.D. Cal. July 14, 2010) (rejecting § 1981 claim where the complaint did "not state discipline was imposed based on intentional racial discrimination"); <u>Brooks v. City of Fremont</u>, Civ. No. 07-06458 JSW, 2008 WL 1994889, at *5 (N.D. Cal. May 5, 2008) (dismissing an employee's § 1981 claim when plaintiff only alleged that he was "carefully scrutinized," and plaintiff moreover "fail[ed] to allege that similarly situated employees were treated differently").

As for the alleged discriminatory policies, plaintiffs'

vague assertions that Farmers' official policies were "rooted in an entrenched posture of deliberate indifference" and "condone[d] race-based discrimination" similarly fail to allege intentional discrimination. Compare Brown v. Contra Costa Cnty., Civ. No. 12-1923 PJH, 2012 WL 4804862, at *8 (N.D. Cal. Oct. 9, 2012) (dismissing § 1981 claim which contained only "vague and conclusory allegations regarding the 'undercurrent of racism in the criminal justice system'"), with De Los Santos v. Panda Exp., Inc., Civ. No. 10-01370 SBA, 2010 WL 4971761 (N.D. Cal. Dec. 3, 2010) (denying dismissal of § 1981 claim where plaintiffs cited specific examples of discriminatory policies, such as "misinforming non-Asian employees about the requirements for advancement").

Since plaintiffs' allegations fail to state a § 1981 claim for which relief can be granted, the court will dismiss plaintiffs' first cause of action.

  B. Breach of Contract Causes of Action

Plaintiffs' second and sixth causes of action allege breach of contract.

"The elements of a claim for breach of contract are: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages." J&J Pumps, Inc. v. Star Ins. Co., 795 F. Supp. 2d 1023, 1027 (E.D. Cal. 2011) (citing First Commercial Mortg. Co. v. Reece, 89 Cal. App. 4th 731, 745 (2d Dist. 2001). A plaintiff "must plead . . . the contract either 'by its terms, set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by

7

reference, or by its legal effect.'" N. Cnty. Comms. Corp. v. Verizon Global Networks, Inc., 685 F. Supp. 2d 1112, 1122 (S.D. Cal. 2010) (quoting McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1489 (2d Dist. 2006)). "In order to plead a contract by its legal effect, [plaintiffs] must allege the substance of its relevant terms." Id. (internal quotation marks omitted).

Plaintiffs fail to attach copies of both the alleged COD agreement and the Garage Keepers policy. Plaintiffs also fail to allege the substance of the contracts' relevant terms. While the FAC alleges that plaintiffs were "denied the right of inspection," (FAC ¶ 11), the FAC does not allege whether the right was guaranteed under the COD agreement, the Garage Keepers policy, or both. The FAC does not set forth the obligations of the parties under the contracts, the dates the contracts were entered into, or other relevant terms. The court cannot even decide whether individual defendants should be named in the action because nowhere does the complaint allege who signed these contracts. The court, therefore, will dismiss plaintiffs' second and sixth causes of action.

  C. Breach of Implied Obligation of Good Faith and Fair Dealing

"Every contract contains an implied covenant of good faith and fair dealing." Digerati Holdings, LLC v. Young Money Entm't, LLC, 194 Cal. App. 4th 873, 885 (2d Dist. 2011). "The scope of conduct prohibited by the implied covenant depends on the purposes and express terms of the contract." Id.

Here, because the plaintiffs fail to plead the purposes and express terms of the contract, the third cause of action does

8

not state a claim upon which relief can be granted and thus will be dismissed.

        D.   <u>Negligence</u>

"[I]n order to prevail in a negligence action, plaintiffs must show that defendants owed them a legal duty, that defendants breached that duty, and that the breach proximately caused their injuries." <u>Wiener v. Southcoast Childcare Ctrs., Inc.</u>, 32 Cal. 4th 1138, 1145 (2004). "An omission to perform a contract is never a tort, unless that omission is also an omission of a legal duty." <u>Erlich v. Menezes</u>, 21 Cal. 4th 543, 551 (1999) (quoting <u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal. 4th 503, 515 (1994)) (internal quotation marks omitted). Generally, "negligence based on an insurer's breach of contract term is not a cognizable cause of action under California law." <u>Sanchez v. Lindsey Morden Claim Servs., Inc.</u>, 72 Cal. App. 4th 249, 254 (1999).

Plaintiff alleges that defendants breached a duty when they failed to cover purported losses under an insurance policy. (FAC ¶¶ 42(A)-(G).) This is not a cognizable cause of action under California law, and plaintiffs "voluntarily dismiss" their cause of action for negligence. (Pls.' Opp. to Mot. to Dismiss (Docket No. 26) at 6.) The court will therefore dismiss plaintiffs' fourth cause of action.

        E.   <u>Breach of Fiduciary Duty</u>

"In order to plead a claim for breach of fiduciary duty, the claimant must allege (1) the existence of a fiduciary relationship giving rise to a fiduciary duty, (2) breach of that duty, and (3) damage proximately caused by the breach." <u>Negrete</u>

9

v. Fid. & Guar. Life Ins. Co., 444 F. Supp. 2d 998, 1003 (C.D. Cal. 2006).  "Under California law, an insurer is not a fiduciary for its insured in the traditional sense and cannot be held liable for the breach of fiduciary duties."  Casey v. Metro. Life Ins. Co., 688 F. Supp. 2d 1086, 1100 (E.D. Cal 2010).  Some courts hold that a plaintiff may bring the a claim for breach of fiduciary duty under either implied covenant, or breach of fiduciary duty, or duty to engage in fair practices, while other courts require the claim to be pled under the implied covenant of good faith and fair dealing.  See id. at 1100-01 (explaining the two lines of cases and adopting "the sounder approach that a breach of fiduciary duty is analyzed under the covenant of good faith and fair dealing").

Here, plaintiffs only allege that "defendants failed to act in a reasonable manner as required under the same or similar circumstances."  (FAC ¶ 49.)  Plaintiffs' allegations do not indicate a fiduciary relationship with either Farmers or Truck.  The court will therefore dismiss plaintiffs' fifth cause of action for breach of fiduciary duty.

  F. Section 1985(3)

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

10

"A claim under this section must allege facts to support the allegation that defendants conspired together.  A mere allegation of conspiracy without factual specificity is insufficient." Karim-Panahi v. L.A. Police Dept., 839 F.2d 621, 626 (9th Cir. 1988).  "Only allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and the actions taken in furtherance of the conspiracy, will be deemed sufficient." Plymale v. City of Fresno, Civ. No. 09-0802 LJO DLB, 2009 WL 2870626, at *4 (E.D. Cal. Sept. 3, 2009).

"[I]n addition to identifying a legally protected right, a plaintiff must demonstrate a deprivation of that right motivated 'by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"  Sever, 978 F.2d at 1536 (quoting Griffith v. Breckenridge, 403 U.S. 88, 102 (1971)).

The FAC indicates that defendants were the conspirators, that the relevant time frame was from 2009 to 2011, and that the conspiracy's aim was to strip plaintiffs of their COD designation, which was accomplished on February 27, 2012.  (FAC ¶¶ 13, 60.)  The people involved, the relevant time frame, and the object of the conspiracy are all alleged, therefore the conspiracy is pled with sufficient particularity.

Plaintiffs do not, however, sufficiently plead racial animus.  While the facts in the FAC point out that plaintiffs are African-American and defendants are Caucasian, the FAC only alleges that the incidents surrounding repair of Aube's automobile were a "pre-textual basis" for the removal of the COD

11

designation, and that the removal "illustrates the animus involved." (FAC ¶ 60.) Nowhere does the FAC directly allege that the pretext or animus was based on defendants' race, nor do the facts indicate that this was the case. Therefore, plaintiffs' seventh cause of action is dismissed.

### G. Prayers for Relief

First, Defendants request that the court dismiss or strike plaintiffs' request for punitive damages. Defendants also request that the court dismiss certain requests for injunctive relief because the requests are "not legally cognizable." (Defs.' Second Mot. to Dismiss at 22.)

Since all of the plaintiffs' causes of action have been dismissed, the court will withhold ruling on what damages and injunctive relief are available until a valid cause of action has been pled.

### H. Leave to Amend

The Ninth Circuit instructs that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2003) (quoting Doe v. U.S., 58 F.3d 494, 497 (9th Cir. 1995)).

Here, while the plaintiffs have already amended their pleadings once before, they did so before the court could rule on defendants' motion to dismiss. Because the deficiencies in the complaint can be readily cured, and because plaintiffs will not be prejudiced at this early stage of litigation, plaintiffs will be granted leave to amend.

12

1          IT IS THEREFORE ORDERED that the defendants' motion to
2    dismiss be, and the same hereby is, GRANTED as to all causes of
3    action.
4          Plaintiffs shall have twenty days from the date of this
5    Order to file an amended complaint if they can do so consistent
6    with this Order.
7    DATED: October 24, 2012

                              _____
                              WILLIAM B. SHUBB
                              UNITED STATES DISTRICT JUDGE